# JOHN F. CARTER

*vs.*

# THE SUBURBAN WATER COMPANY.

*Water companies: disputed bills; no right to cut water off pending settlement of controversy.  Injunction.  Public Service Commission: no power to hear and determine correctness of bills rendered by such companies. Equity: original jurisdiction not ousted by statutory powers given to law courts.*

A water company may adopt, as a reasonable rule, that the supply to any customer may be shut off for non-payment thereof.
p. 93

But when the consumer claims that the bill rendered is incorrect, and offers to adjust and pay the amount for which he is liable, the company cannot, in general, arbitrarily cut off the consumer's supply.                                    p. 94

In such a case, an injunction is a proper remedy for relief.
p. 95

The Public Service Commission is not invested with the power to hear and determine controversies between consumers and water companies as to the correctness of bills rendered consumers.                                                    p. 95

Where a court of equity has original jurisdiction, and a statute confers upon a law court similar powers, the jurisdiction of equity is not thereby ousted.                          p. 95

*Decided June 28th, 1917.*


Appeal from the Circuit Court of Baltimore City. (STUMP, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*Robert Biggs,* for the appellant.

*Daniel R. Randall* (with whom was *Robert E. Lee Marshall* on the brief), for the appellee.

BURKE, J., delivered the opinion of the Court.

John F. Carter, the appellant, is the owner of seventy-one dwelling houses, which are located in West Arlington, Baltimore County, Maryland, on certain avenues and roads mentioned in the bill filed in this case. The appellee is a public service corporation, having its principal office in Baltimore City, and is engaged in the business of furnishing water to the appellant and many other property owners in and about West Arlington. The seventy-one houses of the appellant are connected with the water mains of the appellee, and secure their supply of water for drinking and household purposes from them, and have no other source of supply from which water for drinking and household purposes may be secured. During the quarter ending October 30, 1916, the defendant repeatedly failed to supply said houses with a suitable quantity of water, and the appellant was subjected to damage and loss as the result of the irregular supply of water furnished by the appellee to said houses. On the first day of October, 1916, the appellee furnished the appellant a bill, amounting to $291.42, for water furnished said houses. The appellant disputed the bill, and claimed the legal right to deduct therefrom the losses sustained by him as the result of the failure of the appellee to furnish an adequate supply of water for drinking and household purposes, "but expressed his willingness to adjust the said accounts with the defendant and to pay it such sum of money as would reasonably and fairly

represent the proper charges for the services rendered by the defendant; that the said defendant, however, positively refused even to consider the claim of your orator, and also notified your orator that unless the said bills as rendered are paid on or before ten o'clock on Tuesday the tenth day of October, nineteen hundred and sixteen, it would cut off the supply from all the said houses, and leave them and the tenants therein without any supply of water for any purpose whatever." The appellee is insolvent.

The bill in this case was filed on October 9, 1916, and set out substantially the facts above stated, and prayed for an injunction against the appellee, its officers, agents and servants restraining them from cutting off the supply of water from the houses or any of them, and for other and further relief. An injunction was issued on October 9, 1916, as prayed,—the appellant first having filed an approved bond in the penalty of two thousand dollars as required by the order of Court. On December 2, 1916, the defendant demurred to the bill upon the ground that the plaintiff "has a plain, adequate and complete remedy at law." On the sixth day of February, 1917, the Court passed an order dismissing the bill and dissolving the injunction, and from that order this appeal was taken. The appellant filed an approved appeal bond which operated to suspend the effect of the order.

The single question presented by the appeal is this: Upon the facts stated in the bill, was the plaintiff entitled to the injunction prayed for? It is to be observed that this is not a simple, and, perhaps, a common case, where a water company shuts off or threatens to shut off the supply of water from a consumer for non-payment of the amount due for water supplied.

It is now well settled that a water company may adopt, as a reasonable regulation for the conduct of its business, a rule providing that the water supplied to a customer may be shut off for non-payment therefor. *City of Mansfield* v. *Humphreys Mfg. Co.,* 82 Ohio St. 216; *Shiras* v. *Ewing,* 48

Kan. 170; *McDaniel* v. *Springfield Water Company*, 48 Mo. App. 273; *Turner* v. *Revere Water Co.*, 171 Mass. 329.

But it is a case of dispute as to the amount due, where the appellant had expressed himself ready and willing to adjust and pay the amount for which he is liable, and where the company declines to accept anything less than the amounts of the bills rendered, and threatens to shut off the water on a certain day unless the bills are paid. The courts appear to be quite uniform in holding that a water company cannot arbitrarily shut off the consumer's supply when the amount claimed is a matter of just dispute. *Cox* v. *City of Cynthiana*, 123 Ky. 363; *Wood* v. *City of Auburn*, 87 Me. 287; *Turner* v. *Revere Water Co.*, 171 Mass. 329.

In *Poole* v. *Paris Mountain Water Co.*, 81 S. C. 438, the Court said: "While a public service water company has the right to cut off a consumer's water supply for non-payment of recent and just bills for water rents, and may refuse to engage to furnish further supply until said bills are paid, the right cannot be exercised so as to coerce the consumer into paying a bill which is unjust or which the consumer in good faith and with show of reason disputes, by denying him such a prime necessity of life as water, when he offers to comply with the reasonable rules of the company as to such supply for the current term." The same principle is announced in *Washington* v. *Washington Water Company*, 70 N. J. Eq. 254. That an injunction is the proper remedy to prevent the shutting off of the water in cases where the consumer denies in good faith, either his liability or the amount of the charge appears to be well established by the authorities.

*Edwards* v. *Milledgeville Water Co.*, 116 Ga. 201; *McEntee* v. *Kingston Water Co.*, 165 N. Y. 27; *American Conduit Co.* v. *Kensington Water Co.*, 234 Pa. St. 208.

The occupants of these houses must have water daily and hourly. It is a prime necessity of comfort and health, and to suddenly shut off the water in order to coerce the owner to pay an unjust or a disputed bill would be not only a

violation of his legal rights, but would subject him to serious injury, and such injury as the owner would likely sustain before he could be compensated in an action at law even against a solvent corporation is sufficient to furnish the equity for an application for an injunction. In *Sickles* v. *Manhattan Gas Light Co.,* 64 Howard Pr. (N. Y.), 33, it appears that General Sickles applied for an injunction to restrain the defendant from cutting off the supply of gas from his residence. He alleged that an improper bill had been presented to him, and that he had offered to pay for the gas consumed, but that the company refused to accept and threatened to remove the meter and shut off the gas. Upon these facts the Court held that he was entitled to a preliminary injunction.

It is contended that the Public Service Commission, under the Act of 1910, Ch. 180 (p. 338), has exclusive jurisdiction over the subject-matter of this suit, and has the power to grant the plaintiff full and complete relief. We do not find that the Public Service Commission is invested with the power to hear and determine the controversy between the parties as to the correctness of the bills rendered, or to determine what amount the plaintiff owes. But if that power be conceded, the Court of Equity would not for that reason be deprived of its original jurisdiction to grant the injunction. It has been long since settled, that where a Court of equity has original jurisdiction, and a statute confers upon the common law courts a similar power, the jurisdiction of equity is not thereby ousted. *Barnes* v. *Crain,* 8 Gill, 398; *Shryock* v. *Morris,* 75 Md. 72.

*Order reversed, with costs, and cause remanded.*